JUG'S CATERING, INC., Appellant–Petitioner,

v.

INDIANA DEPARTMENT OF WORKFORCE DEVELOPMENT, UNEMPLOYMENT INSURANCE BOARD, Appellee–Respondent.

No. 93A02–9803–EX–237.

Court of Appeals of Indiana.

June 29, 1999.

Julie L. Michaelis, Wooden & McLaughlin, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Rosemary Borek, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

SHARPNACK, Chief Judge

Jug's Catering, Inc. ("Jug's") appeals the ruling of an Administrative Law Judge ("ALJ") for the Department of Workforce Development's ("Department") Unemployment Insurance Board ("Board") in which the ALJ concluded that Jug's owed unemployment contributions to the Board for the chefs and servers it employed. Jug's raises one issue which we expand and restate as:

(1) whether the ALJ erroneously determined that the chefs and servers hired by Jug's were employees and not independent contractors; and,

(2) whether Jug's is liable for the unemployment contributions, interest and penalties stemming from its failure to pay the contributions.

We affirm.

The facts most favorable to the judgment follow. Jug's is a full service food catering business. In the course of its business, Jug's employs chefs and servers. In 1995, the Department audited Jug's for the years 1993 and 1994 and concluded that Jug's had underreported gross and taxable wages. Consequently, the Department determined that Jug's owed unemployment contributions. In response, Jug's appealed the audit arguing that the Department had improperly determined that the chefs and servers employed by Jug's were employees and not independent contractors. The ALJ who heard the appeal found that, based upon the "(A)(B)(C) test" set forth in Ind.Code § 22–4–8–1(a), the chefs and servers hired by Jug's were employees, not independent contractors. Thus, the ALJ found Jug's liable for the unemployment contributions as well as the related penalties and interest.

## I.

The first issue is whether the ALJ erroneously determined that the chefs and servers employed by Jug's were employees and not independent contractors. When reviewing a decision of an administrative agency, we review the record in the light most favorable to the administrative proceedings and are prohibited from reweighing the evidence or judging the credibility of witnesses. *Regester v. Indiana State Bd. of Nursing*, 703 N.E.2d 147, 151 (Ind.1998). "Any decision of the liability administrative law judge shall be conclusive and binding as to all questions of fact." I.C. § 22–4–32–9.

Although Jug's does not challenge the facts that formed the basis of the ALJ's conclusions of law, Jug's challenges the ALJ's determination that the chefs and servers employed by Jug's are not independent contractors on the basis that the United States Internal Revenue Service ("IRS") determined that its chefs and servers were independent contractors. Specifically, Jug's directs our attention to the letter it received from the Internal Revenue Service ("IRS") in which the IRS granted Jug's a "prior audit safe haven" under Section 530 of the Revenue Act of 1978. Section 530 reads:

"(a) Termination of certain employment tax liability.—

(1) In general.—If—

(A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and

(B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee, then for purposes of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

(2) STATUTORY STANDARDS PROVIDING ONE METHOD OF SATIS-FYING THE REQUIREMENTS OF PARAGRAPH (1).—For purposes of paragraph (1), a taxpayer shall in any case be treated as having a reasonable basis for not treating an individual as an employee ... if the taxpayer's treatment of such individual ... was in reasonable reliance on any of the following:

(A) judicial precedent, published rulings, technical advice with respect to the taxpayer, or a letter ruling to the taxpayer;

(B) A past Internal Revenue Service audit of the taxpayer in which there was no assessment attributable to the treatment (for employment tax purposes) of the individuals holding positions substantially similar to the position held by this individual; or

(C) long-standing recognized practice of a significant segment of the industry in which such individual was engaged."

26 U.S.C. § 3401 (1995), n. at 360 (Section 530). In its reply brief, Jug's states that "to be granted safe haven status based upon a prior audit, the IRS must have determined, as a result of the audit, that the workers were independent contractors." Appellant's reply brief, p. 3. We disagree.

The IRS audit to which Jug's and the aforementioned IRS letter refer reads in relevant part:

"The Taxpayer treated officers as independent contractors for payments made for services rendered as corporate officers. The duties and responsibilities of the officers are outlined in the corporate minutes. Compensation is determined by the officers during and after the year ends. There are no employment agreements or compensation plans. No employment tax returns are filed and there was no withholding for income taxes. There were three officers as shown below. *The balance of the labor incurred by the Taxpayer is treated as contract or casual labor due to I.R.C. 530.*"

Record, pp. 114–115 (emphasis added). Assuming the emphasized text refers to that labor performed by the chefs and servers, the IRS did not determine that the labor was

indeed contractual or casual labor based upon an independent analysis, but rather due to Section 530, the safe haven statute. Section 530, by its very terms, "is a relief provision available only to employers who *erroneously* classify their employees." *Ahmed v. United States*, 147 F.3d 791, 797 (8th Cir. 1998) (emphasis added). Moreover, Section 530 "merely eliminates liability for those discrete periods of time during which the employer erroneously but reasonably failed to treat an individual as an employee." *Id.* It does not grant perpetual immunity. *Id.* Therefore, we conclude the IRS did not determine the chefs and servers to be independent contractors, but that Jug's fell within the protection of Section 530 after erroneously classifying its employees.

Jug's also directs us to a letter from the Indiana Department of Revenue ("IDR") wherein it waived the penalties for failing to withhold taxes and for classifying employees as independent contractors. The IDR determined that Jug's could "claim the safe harbor provision at Rev. Proc. 85–18, 1985–1 CB 518(B)" due to "a showing of reasonable cause because the workers qualify for treatment as independent contractors." Record, pp. 234–235. The Department of Revenue based its decision upon the IRS audit and did not independently determine the chefs and servers were independent contractors.

As neither the IRS nor the IDR determined that the chefs and servers were independent contractors, the ALJ made an independent determination of their status. Jug's does not challenge the facts upon which the ALJ bases its conclusions of law. Nor does Jug's challenge the ALJ's analysis of the facts under I.C. § 22–4–8–1.[1] Therefore, as we see no error on our own review, we conclude the ALJ did not erroneously determine the chefs and servers hired by Jug's to be employees for purposes of unemployment contributions.

## II.

■ The second issue is whether the ALJ erroneously held Jug's liable for the unpaid unemployment contributions by interpreting I.C. § 22–4–37–1 such that it did not encompass the rights available to Jug's under Section 530. We are not bound by an agency's interpretation of the law. *Natural Resources Comm'n of State of Ind. v. AMAX Coal Co.*, 638 N.E.2d 418, 423 (Ind.1994), *reh'g denied*; *Board of Trustees of Public Employees' Retirement Fund of Indiana v. Miller*, 519 N.E.2d 732, 733 (Ind.1988). Although an agency's interpretation of the statutes and regulations which it is charged to enforce is entitled to some weight, the interpretation of a statute or rule is the responsibility of the court and within the exclusive province of the judiciary. *AMAX*, 638 N.E.2d at 423; *Miller*, 519 N.E.2d at 733.

Jug's argues that the same rights provided by Section 530 as to federal unemployment contributions should be provided for any state contributions the Department seeks. Specifically, Jug's cites I.C. § 22–4–37–1 which reads:

"It is declared to be the purpose of this article to secure to the state of Indiana and to employers and employees therein all the rights and benefits which are conferred under the provisions of 42 U.S.C. 501 through 504, 42 U.S.C. 1101 through 1109, 26 U.S.C. 3301 through 3311, and 29 U.S.C. 49 et. seq., and the amendments thereto. Whenever the board shall find it necessary, it shall have power to formulate rules after public hearing and opportunity to be heard whereof due notice is given as

---

1. The statute reads in relevant part:

"Sec. 1. 'Employment,' subject to the other provisions of this Section, means service, including service in interstate commerce performed for remuneration or under any contract of hire, written or oral, expressed or implied.

(a) Services performed by an individual for remuneration shall be deemed to be employment subject to this article irrespective of whether the common-law relationship of master and servant exists, unless and until it is shown to the satisfaction of the board that (A) such individual has been and will contin-

ue to be free from control and direction in connection with the performance of such service, both under his contract of service and in fact; (B) such service is performed outside the usual course of the business for which the service is performed; and (C) such individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed; or is a sales agent who receives remuneration solely upon a commission basis and who is the master of his own time and effort."

I.C. § 22–4–8–1.

provided in this article for the adoption of rules pursuant to IC 22–4–19–2, and with the approval of the governor of Indiana, to adopt such rules as shall effectuate the declared purposes of this article."

Jug's acknowledges that Section 530 is found within the notes to 26 U.S.C. § 3401 which I.C. § 22–4–37–1 does not encompass. However, it argues that the substance of Section 530, by providing an exemption to 26 U.S.C. § 3301, which I.C. § 22–4–37–1 does encompass, "must be considered to fall within the scope of [the] public policy mandate" of I.C. § 22–4–37–1. Thus, Jug's asks that we construe I.C. § 22–4–37–1 so as to encompass Section 530 as an amendment to 26 U.S.C. § 3301 and such that any safe haven exemption granted by the IRS under Section 530 would be similarly honored by the Department.

■ We may not construe a statute when its plain language is unambiguous. *Department of Revenue of State of Ind. v. There To Care, Inc.*, 638 N.E.2d 871, 873 (Ind.Ct.App. 1994), *trans. denied*. Rather, we presume words appearing in the statute were intended to have meaning, and we endeavor to give those words their plain and ordinary meaning absent ambiguity or a clearly manifested purpose to do otherwise. *Indiana Dept. of Human Services v. Firth*, 590 N.E.2d 154, 157 (Ind.Ct.App.1992), *trans. denied*.

There are flaws in Jug's reasoning. First, Section 530 is not specified by I.C. § 22–4–37–1 nor is it found within any of the specified federal statutes. *See* I.C. § 22–4–37–1. Second, Section 530 is not an amendment to any of the specified federal statutes. It does not alter any of the specified federal statutes by modification, addition or deletion. *See* BLACK'S LAW DICTIONARY 81 (6th ed.1990). Rather, Section 530 is located within the notes to 26 U.S.C. § 3401, which is not listed in I.C. § 22–4–37–1. Thus, Section 530 is not an amendment to any of the listed statutes in I.C. § 22–4–37–1.

Third, Section 530 is not a part of the Federal Unemployment Tax Act ("FUTA"), found at 26 U.S.C. § 3301 through § 3311. Indeed, the purpose behind Section 530 differs significantly from that of FUTA. Congress enacted Section 530 "to alleviate what was perceived as overly zealous pursuit and assessment of taxes and penalties [by the I.R.S.] against employers who had, in good faith, misclassified their employees as independent contractors." *Ahmed*, 147 F.3d at 797. Thus, Section 530 had a specific purpose directed toward eliminating abuses of the I.R.S., the federal agency charged with collecting unemployment contributions. Thus, the Court of Appeals in South Carolina recently held that while FUTA "clearly envisions complementary state legislation[,] ... section 530 is not a part of FUTA and is not a mandatory law with which every taxpayer who may be subject to unemployment tax liability must comply; it is merely an option afforded to those who do qualify." *Professional Samplers, Inc. v. South Carolina Employment Security Comm'n*, 334 S.C. 392, 513 S.E.2d 374, 378 (1999). Finally, Jug's directs us to no other cases where a similar situation has arisen or where Section 530 has been addressed as an amendment to 26 U.S.C. 3301[2]. Therefore, we conclude that Section 530 is not a part of FUTA, nor does I.C. § 22–4–37–1 encompass the federal rights available under Section 530.

For the foregoing reasons, we affirm the decision of the ALJ imposing liability upon Jug's for unpaid unemployment contributions.

Affirmed.

DARDEN, J., and ROBB, J. concur

---

**2.** Though Jug's cites *Wanatah Stone Co. v. Indiana Employment Security Board*, 142 Ind. App. 590, 236 N.E.2d 514 (Ind.Ct.App.1968), it can be easily distinguished on two grounds. First, the workers in *Wanatah* had been determined not to be employees under the Social Security Act. *Id.* at 598, 236 N.E.2d at 519. Here, unlike *Wanatah*, there has been no determination that the chefs and servers were not employees under federal law. Second, in *Wanatah*, we relied upon an earlier version of I.C. § 22–4–37–1 that provided for securing the rights and benefits provided under the "Social Security Act." The current version of I.C. § 22–4–37–1 specifically identifies the federal statutes that it encompasses. For these reasons, we conclude that *Wanatah* is inapplicable.